Mid-Continent Casualty Company v. Safe Tire Disposal Corporation, et al
















IN THE
TENTH COURT OF APPEALS
 

No. 10-98-294-CV

     MID-CONTINENT
     CASUALTY COMPANY,
                                                                         Appellant
     v.

     SAFE TIRE DISPOSAL
     CORPORATION, ET AL,
                                                                         Appellees
 

From the 40th District Court
Ellis County, Texas
Trial Court # 54913
                                                                                                                
                                                                                                            
DISSENTING OPINION
                                                                                                                
   
      The question in this appeal is whether damage alleged to have occurred as a result of a fire
at the plant of a tire recycling company is covered by an insurance policy. The majority, after
analyzing the policy and an extensive discussion of the definition of “waste,” construes the
policy to provide coverage to the damages as alleged. Because the policy contains a
“definition” of “waste” by reference to what is included within the meaning of the term which
is contrary to the interpretation of the term as construed by the majority, I respectfully dissent.
      Safe Tire is in the business of processing tires. They are designated by the Texas Natural
Resource Conservation Commission as a waste tire processing facility. Their business is to
operate “a facility 'at which scrap tires are collected or deposited and shredded to facilitate the
future extraction of useful materials for recycling, reuse, or energy recovery.' . . . Safe Tire
processes scrap tires by separating them into rubber chips and wire pieces which Safe Tire
stores at its facilities for later distribution.” Mid-Continent Casualty Company v. Safe Tire
Disposal Corporation, No. 10-99-028-CV, slip op. at 2 (Tex. App.—Waco, March 22, 2000).
      It is undisputed that a fire began in one of the wire piles and spread to the piles of rubber
chips. It is the smoke from this fire that resulted in alleged damages to area businesses,
property and individuals. Various lawsuits were filed against Safe Tire. Safe Tire notified
Mid-Continent to provide a defense and coverage. Mid-Continent responded that they were
not liable because the insurance policy excluded coverage.
      The clause in the insurance contract in dispute is referred to as a pollution exclusion
clause. The pollution exclusion clause states that the policy does not provide coverage for:
I. 2. f. (1) “Bodily injury” or “property damage” arising out of the actual, alleged or
threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

***
(b) At or from any premises, site or location which is or was at any time used by or
for any insured or others for the handling, storage, disposal, processing or treatment
of waste;

***
Subparagraphs (a) and (d)(i) do not apply to “bodily injury” or “property damage”
arising out of heat, smoke or fumes from a hostile fire.

***
 
Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant,
including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste
includes materials to be recycled, reconditioned or reclaimed.
      The wire pieces and rubber chips that caught fire and burned were “to be recycled,
reconditioned or reclaimed” within the meaning and terms of the pollution exclusion clause of
the policy.


 There is no need to look outside the policy for a definition of waste. As a facility
recognized by the Texas Natural Resource Conservation Commission as a waste tire processing
facility, Safe Tire should not be surprised nor heard to complain that a Commercial General 
Liability insurance policy which contains a pollution exclusion clause denies coverage of a site
from which waste might pollute neighboring property and cause damage.
      A possibly confusing aspect of the analysis is a determination of whether the pollution
exclusion applies because the pollution which was dispersed, migrated, released or escaped
from the location was in the form of smoke, vapor, soot and fumes and not in the form of the
actual waste products, in this case wire pieces and rubbers chips. It was not the waste directly,
but the burning of the waste, that resulted in the alleged damages. Thus we must look to the
terms of the policy to see how it applies to these facts.
      The pollution exclusion clause at issue, I. 2. f.(1)(b), provides that there is no insurance if
the escape of pollutants is from a premises, site or location where waste was stored or
processed. However, the hostile fire clause (quoted above) provides coverage if the damages
are from a hostile fire even though the damage is the result of what would otherwise be a
pollutant, i.e. smoke, soot, etc. Thus, the hostile fire clause operates as an exception to the
pollution exclusion clause. However, the hostile fire exception does not cover a fire at an
excluded site. Because the site where the wire pieces and rubber chips were stored is a site
excluded by the pollution exclusion clause, the damages alleged to have resulted from a fire at
the excluded site are clearly not covered.
      Safe Tire responds and the majority concludes that the policy provides no coverage and is
meaningless if it does not cover this fire. Not true. If the administrative building had burned,
instead of the piles of waste (at the site where they were stored), and the same type claims had
been made against Safe Tire, there is little doubt that the claims would be covered by the terms
of the policy. Additionally, fire was not the only risk insured against by the terms of the
policy.
      When the location at which the fire occurred is so clearly a place where waste, as
described in the policy, was stored, and is therefore excluded from coverage under the express
terms of the policy, Mid-Continent had no duty to defend the claims, much less provide
coverage, for the alleged damages.
      This is not unlike a petition which clearly describes a car which the owner did not include
on an automobile policy. After the car is involved in a wreck, the owner says, “Well I have 
another car that was not listed on the policy. But I do have an automobile insurance policy
with your company. You have a duty to defend me and pay any damages, even though the
premiums you charged me did not include coverage for the car involved in the wreck.” The
result in this case should be equally obvious.
      Based upon the foregoing analysis, I would reverse the declaratory judgment and render
judgment that the pollution exclusion in the policy excludes coverage and the duty to defend
claims which resulted from a fire at a site where piles of wire pieces and rubber chips that
were to be recycled, reconditioned or reclaimed were stored.


                                                                         TOM GRAY
                                                                         Justice

Dissenting opinion delivered and filed March 22, 2000
Publish